All right, I'll call our next case. Take your time setting up. It is No. 22-11870 GLE Scrap Metal, Inc. v. Tian Tan Mr. Jackson, whenever you're ready. Mid-Police Court. Good morning, Matt Jackson. I'm here along with my colleague Alicia Kopsinskas, and we represent GLE Scrap Metal, Inc. We're here, obviously, on the denial of a preliminary injunction by the District Court. As the Court's well aware, the denial or approval of a preliminary injunction is based on the abuse of discretion standard, where findings of fact are reviewed for clear error. Here, most of the facts are actually not in dispute. There's no question that Mr. Tan did the things that he did, but the main point from our brief is that the law was applied inappropriately, and therefore that is reviewed de novo. Further, when you look at, again, the facts, none of those are really in dispute. The facts are that Mr. Tan worked for GLE for a number of years, performed these roles and responsibilities. One of them was to develop technology, was to develop a trading platform that would actually, in his words, replace him. That was done through the support of GLE. That was part of his process to create this app. Can I ask you just a quick question? What do we know, either from what the District Court found or from the record more generally, about whether his app is currently capable of facilitating trades? Well, Your Honor, there's two answers to that question. One, it is. There was record evidence provided by a supplier from GLE that started, that he was facilitating a trade with them. There's record evidence of that. There's email correspondence saying, I have a purchase order. Further, whether it completes trades or whether it doesn't complete trades doesn't really matter. The fact is, is that he had access to GLE's trade secrets. GLE specializes in taking buyers and sellers and putting them together quickly. Basically, a supplier will have a bunch of scrap metal. It'll submit it to GLE. GLE will use its processes, its internal pricing structures, its knowledge and expertise, and then find and match that up with the appropriate buyer. That is exactly what the app does. And in fact, there's a good reason that that's why the app does that. It's because that's why it was created. It was created. Doesn't the ability to do trades, though, go to the irreparable harm and the imminent nature of the irreparable harm? But it's not just the loss of dollars. The district court, we believe, was too narrow in its ruling. Under Michigan law, under the Trade Secrets Act, and frankly, this court, it's not just about the loss of a sale of a trade. It's the loss of the goodwill. It's the loss of the fair, competitive nature of that. That, by definition, that this court has found, as well as the Michigan courts, is very difficult to quantify. Those are all fair points, but I didn't see that you made that argument to the district court. And so, so the question is, how did the district court abuse its discretion if those arguments were never presented to it? In fact, Your Honor, that is the exact argument we made to the lower court. The lower court ruled that said, as part of the ruling on irreparable harm, stated that he didn't see that it could trade, and that even if there was damage, you could solve that with monetary damages. So let me, can I just, I want you to get back to Judge Grimberg's question, but because this implicates something you just said to me. So when the district court said, I don't think it can trade, isn't that a finding of fact that we review for clear error? The fact You said there was record evidence that showed it can trade, but the district court said, I don't think it can. Correct, Your Honor. But I also think that you have to look at the fact that the app, as it's designed, connects buyers and sellers of scrap metal, does it quickly, and it was done using GLE's technology. That goes to the, beyond just the lost sales. The trading is one aspect of it, and ironically, during the argument, because the timing of this is important, Mr. Tan resigns in September, but works for GLE. He was paid for four years. He was paid to create this application to He then, within two months, starts to solicit contact customers using this app that he designed for GLE. Some, a lot of those customers were not necessarily just simply on GLE's customer list. They were also on another sort of, I use the term global, a global list from another industry source. That's correct, Your Honor. However, Mr. Tan, based on his understanding, unique understanding of the information that was brought together, knows that those individuals are GLE customers. That, in and of itself, is a violation of his non-compete and non-solicitation agreement. Right. Let me ask you this, and I don't know if you've, did he fully answer your question? No, I think I kind of interrupted. I'm sorry. Yeah, go back, go back to your... Yeah, I mean, fair point that the district court made a finding in its order that found that monetary on appeal, and today, about why monetary relief is not sufficient, about the harm to the goodwill, and sort of the equities. Those arguments weren't presented to the district court. And so, we're looking at whether the district court abused its discretion, and you're asking us to consider arguments that were never made to the district court. Respectfully, Your Honor, I think the record evidence that those arguments were made. In fact, the argument that was lost sales, because he immediately started using the app and competing, and we only had evidence that there was one trade particularly going on. We had evidence, we had GLE head clients contacting them saying, is he still working for you? And it was confused by that. We actually never raised the issue of lost sales. What we argued was, under the four main factors that the court's well aware of with respect to the violation of non-competes, and preliminary injunctions in for the continued contact of our customers and the use of this app that Mr. Tan created for GLE. It was for and on behalf of GLE. The argument that you're going to hear is that it was only a beta version. He did it on his own time. He did it on GLE's time. He was paid for it. GLE brought technical individuals in to assist him in developing and creating this app. And again, when you look at the trade secrets that he had access to, as this court has found, and as the Michigan court has found, it's the compilation of that information that can make it unique and make it a trade secret. I don't think there's a... You had both a trade secrets claim and a breach of a non-compete agreement, a restrictive covenant claim, right? Yes, sir. Okay. One of them has a temporal time limit, right? Yes. Your non-compete doesn't go on forever, right? How long is the term? Remind me. Two years, Your Honor. Okay. So what injunction you wanted the district court to craft? Like, tell me in a sentence or two what the injunction should look like. The injunction should be, one, cease contacting GLE's customers and competing in a direct way, because again, the app does exactly the same thing that GLE does. Secondly, for the term of his employment agreement, don't compete against us for the term of that employment agreement. What that does, again, the reason you have these time limits is so that you protect the employers so they can account for it. So GLE has continued to try and develop... But as long as he doesn't use it, would the injunction permit that? He can develop the app, but he can't use GLE's trade secrets to do it. That's the problem. There's no time limit on that. Boy, I'm asking you the question because the injunction that you've articulated, and I know we're doing it orally, so it's really hard to comply. But that wording is, like, unenforceable. Like, what does it mean to not compete? What does it mean? Can he develop the app, or are you going to be in constant litigation every time he makes an improvement because you're going to claim that the improvement was because of the knowledge of your going forward? And I'm not sure that you provided in the district court a workable preliminary injunction. Respectfully, Your Honor, I think what we were asking the district court to do was find that he was competing. There was an imminent... He was doing it. He was contacting those individuals. So I think the preliminary injunction would be very specifically to the non-compete, non-solicitation is the terms of that agreement are enforceable for the term of that agreement. Further... But you just can't tell somebody to follow a contract. That's an unenforceable injunction. It's like telling somebody to follow the law. But we're... Sorry, Your Honor. An injunction has to be, because it is... because a violation is theoretically punishable by contempt, the wording of an injunction has to be pretty precise. And in this case, you've got a lot of stuff going on. You've got the trade secrets. You've got the non-compete. You've got the app. You've got the contacting of clients, both within and outside of GLE's customer base. My suggestion is this is a tough injunction to craft, even if you prevail. Actually, with Your Honor's permission, I'll take it in reverse order and talk about the trade secrets, because the trade secrets argument is very specific. He had access to this information. He created it for and on behalf of GLE. And immediately upon leaving, after he removed himself to China, he immediately starts competing, using the app that he created. The bar is you can't use an app that you used GLE's trade secrets. There's no question, when you look at the website that he published, it references the fact that he used GLE. He referenced the fact that the app has trade secrets. That's a quote. He used trade secrets. Then when you look at the public statements that he's making, he's saying, I'm using my experience at GLE. I'm using this information. So with respect to the misappropriation of trade secrets, the injunction is you can't use an app that you created while you were at GLE, using GLE's materials. Now, that's one discrete issue. But he can continue to develop the app? Exclusively of using GLE's materials, correct. There's no harm in that. But he's published on his website. But right now, he has an app at a certain stage of development, right? We can all agree on that. Whatever that stage of development is, he has an app that has progressed through a certain stage. It can do X, Y, or Z, whatever X, Y, or Z are, right? Yes? Okay. Can he now try to get it to do something else? Can he get the app to be better? The problem is, Your Honor, I would jump back and say, he hasn't developed this. It was done while he was an employee at GLE. You told me, but that's why I asked you the question initially, because I'm a little confused. And maybe it's me, and I'm asking the question the wrong way. Is your position that the injunction says he cannot work on the app, cannot develop the app, cannot do anything regarding the app, because the app is our property? Our intellectual property, our trade secret. I thought you told me that he could improve the app as long as he didn't violate the non-compete, and as long as he didn't use your trade secrets. I think there's a straightforward distinction between those two issues. Okay. What our argument is, this app, as it's created, and it's not from our position, and it's continued to happen, it is done. It is working. So our position is, is that was created on and for GLE. It was created using the technology. It is, when you look at this description, it's a carving copy of GLE's description of what it does. Its job was to replace Mr. Tan and remove himself. So what we're saying is, this app in its current form, based on its use of the trade secrets of GLE, you can't use it. Now, if he creates it— So the injunction would not let him improve it? Well, I think that's where I draw the distinction, is if he wants to create a different app, not using our— Right, that was my confusion then. So he cannot improve the current app? No. Because you think it's your property? Correct. And it's been developed using your confidential information and your trade secrets? Absolutely. He can go out and develop a new app that is completely divorced from all of that intellectual property? Agreed, Your Honor. And I would also point out, you know, once the non-compete term runs, then he's free to obviously do whatever he wants. You can't— How long is left in that term, by the way? Probably about eight, nine months. But under case law, it's told during that time, so it could extend out further. We simply don't— You know, we're talking about, and part of this is my argument, is you separate these two things. But when you put them back together and you look at how this is being done, the use of this app, the fact that it was created for GLE, that he was paid for it, and now he's using that in combination with the experience and the knowledge that he learned from GLE and how that process works, and he's using it to sell it to our customers. And that's the point that I think we, the district court, overlooked. It's, under Michigan law, it's not just about lost sales. It's about that immeasurable loss of goodwill, the client that doesn't call you anymore, the loss of confidence in the unfair competition. Can I just ask you a quick question about the notion that goodwill is immeasurable? I mean, so, you know, I won't take the credit for it. One of my law clerks found a case in which we said, it's axiomatic that the measure of damages to business property, such as goodwill, is based on the measurement of the difference in value of the property before and after the injury. So it sounds like we do measure goodwill. So why isn't the loss of goodwill that you're alleging compensable with money, which would be the death of the request for an injunction, right? I wouldn't disagree with Your Honor that, in some cases, the loss of goodwill is, is, you can calculate it. But in this particular case, it's, it's one of the difficult parts. That's one of the factors that makes it difficult to calculate. One of those, those particular loss of goodwill is difficult. In some cases, you can quantify it. But under Michigan law, under the Fair Trade and Secret, their version of the Misappropriation of Trade Secrets Act, they specifically held in the Kelly cases, which we cite to, that these are the types of things that make it very difficult. And how do you measure the loss of unfair, the impact of unfair competition? How do you measure the fact that you didn't, you could say, well, we lost this. But is that because of a decline in the prices of particular scrap metals? Or is that a direct result? It's very difficult to connect those things. I don't disagree. So just help me. I just want to make sure that I've got the universe of the relevant case law in my head. So Michigan law, you're saying, like, that's fine if the 11th Circuit has said that with respect to other scenarios. But Michigan law, does Michigan law say that goodwill is, like, inherently incalculable? Or difficult to calculate? To be very honest, it's inherently difficult to calculate. So, but I don't think that that's inherently different than the 11th Circuit either. I think the 11th Circuit has found that it, you know, obviously, if you had, he stole this sale, this sale went away, you could measure that by 100 bucks. You could do that. It's much more difficult to measure the goodwill aspect of it. Is it possible? Yes. But it's inherently difficult. And again, I think when you look at the trade secret aspect of this, and you look at the fact that all of this information was compiled and he had access to it. No one disputes that. He had access to it and he used it during his time he was paid for to do this. And in fact, used it to create this app. And within two months of his leaving, he was out marketing and selling it and using GLA's name, GLE's name in the marketing and selling. I see my time's expired. So I'll reserve the remainder of my time for rebuttal. All right. Thank you very much, Mr. Jackson. Thank you, Your Honor. Okay, Mr. Gigliotti. My name is Louis R. Gilotti and I represent the appellees. As we know, as established 11th Circuit precedent, a preliminary injunction is the exception rather than the rule. So while appellant respectfully offers that there's not a lot in dispute about the facts, we respectfully disagree. We're relying on the facts of the district court. The district court heard evidence, had witnesses, and saw the documents. So the district court evaluated three of the four elements of a preliminary injunction. What it didn't really evaluate is the threatened injury to the movement exceeding the damage that the preliminary injunction may cause to the opposing party, which is basically a balance of the hardships. But it did evaluate one, two, and three. And in number one, that's the substantial likelihood of success on the merits. We respectfully disagree with appellant's position that GLE's intellectual property, trade secrets, and proprietary information were used. The court, the district court found otherwise. Where did it make that finding? I mean, let me back up. He worked on developing the app while he was at GLE, right? Yes. GLE decided not to take it for all it was worth. Maybe didn't think it was worth the effort. Maybe thought it wasn't succeeding. Maybe thought that Mr. Tan could do something better with his time or whatever. When Mr. Tan leaves, he continues developing the app. That's a bad look for you. I respectfully disagree. Okay. What the judge found was that Mr. Tan, on his own money, $650,000 of his own money, zero, was contributed by appellant. At the same time, while he was developing, he was not doing it under the table or with intent to deceive or to hide what he was doing. As he was doing it, using his wife as a coder. That doesn't take away from the fact that he was doing it while employed for GLE. Certainly not. But he was paying her. He was using his money. He was bringing it to GLE at all times. Explaining it to GLE, not as an employee, but as a side project. He was not trying to hide it. He brought it to GLE and he said, are you guys... Where do you get this side project thing from? I'm sorry? Where do you get this side project description from? Well, the judge heard and the judge made facts that he, if you look at the order, I don't know if you want, I'll tell you what page it's on. But in the judge's order, the district court's order, he made reference that he did it on his own time with his own money. The bigger issue is the complaint. It wasn't so much about the... He spent $650,000. Appellant contributed zero. He did it out of his own money, out of his own pocket, on his own time. The district court made that finding as a finding of fact. There's really not enough... Here's what I think you might be too generously describing the district court's findings. Page four. The parties dispute whether, after Tan brought his initiative to GLE's attention, Tan included its execution and his contractual duties within the company and whether his wife developed the app on his behalf within the scope of his, Tan's employment. What they say is, then he goes on to say what's not in dispute. So I'm not sure the district court made the sort of global finding that he did everything regarding the app on his time, that everything was his side project. Maybe that's an inference to be drawn from the actual findings, but I'm not sure the district court went as far as you think. Judge, in the absence of it being clear, I think the judge, in its discretion, the district court has the right to make a determination and a finding based on the unclarity of that. It doesn't need to be required to deny a preliminary injunction that he make that finding. If he says that that may be decided at trial, that is an issue for the trial, but for purposes of a preliminary injunction, which is a draconian remedy, and it is the exception and not the rule, that the judge wasn't... It wasn't clear enough to the judge, giving deference to your inquiry. It wasn't clear enough for the judge to make a determination that that should be the basis for the entry of preliminary injunction. And then it would require that this panel make a determination that that's clearly erroneous. And I don't believe that based on the facts, if you have dual testimony where each side is saying something very similar to their own benefit, that you have to take into consideration how the judge who heard the facts and who heard the evidence, how he used that in making his determination. So unless he was clearly erroneous in making a finding that that issue is unclear, well, only if it is truly clear should he have issued a preliminary injunction. But in the absence of clarity, he has the discretion, and it wouldn't be abuse of his discretion, to deny a preliminary injunction, which is the most draconian of civil remedies at the outset of a lawsuit. Agreed. Agreed on the last point. But I'm not sure I agree with the district court on likelihood of success. The fact that Mr. Tan may be using his wife to help him doesn't say one way or the other whether he's using trade secrets or confidential intellectual property belonging to GLE. I agree. It says nothing. I agree with that. You can't give it to your wife and then think that you can skate from any impropriety. We're not alleging that that would happen. We're not alleging that. But that's one of the things that district court said in its likelihood of success analysis. Pointedly, Tan is not capable of creating the app as he instead enlisted the service of his wife to write its underlying code. Right. Not sure about that. But Judge, it would also require, with all due respect, it would require that he uses GLE's materials. And the judge found that, okay, there are customer lists. A customer is like under the town and country case. A customer list where you have a cleaning business and you compile 100 clients and they happen to be in the phone book. And you say, hey, they're in the phone book. I get to steal your customers. That's not acceptable. But you can call every person in the phone book to try to gather your own clients. And that's what Appelli did here. He took it upon himself to go to the ISRI published list, which is the trade organization list, and he sent a blind email to all of them. Some, but we don't know how many because it wasn't really presented to the district court as to how many of their customers are in the ISRI list. So when it comes down to whether he used their information, we really need to look at the third element that the judge addressed, which is the need to protect the public. What the judge found at the district court level was that this is innovative. This actually rejects, the whole gist of this was that during the time that Appelli was with GLE, he was trying to do something new and different. And GLE was resistant. Why? Because GLE has always contended at this point here, has always contended that the issue here is that we like to do the things our way. We are middlemen and we take our middleman stance and we put a percentage and a profit and a margin on our product that we help people buy and sell. Okay, we do it with proprietary means. The district court acknowledged that what Appelli does is completely different. He uses AI, artificial intelligence, to use a completely different means for matching buyers and sellers and finding prices. He's rejecting the old way and he's actually doing something that's innovative. He's doing something that actually protects GLE and it helps him sustain his avoidance of the violation of his duties under the agreement. That can't be right. I mean, your position is that if he is going to develop an app, and this is my intuition about this case, the reason GLE is here is because whether or not he's got the capacity right now, they're worried that two years from now, he's going to have the capacity. And two years from now, that's going to obliterate them. So they need to get an injunction now because if they don't get an injunction now, it's going to be too late two years down the road and there's not going to be a GLE who's going to be able to sue for damages. So a contention that he is developing something that is going to replace a supposedly outmoded way of doing things, of course it's the same thing. He's doing something in your view, in his view, that's better, that people are going to like, that people are going to use. It's more innovative. But that doesn't take away that it's playing on GLE's turf. In America, Your Honor. You think... Go ahead. This is not about the propriety of the injunction, but you made a claim that he's doing something completely different that's going to benefit GLE. I didn't say... I'm sorry. I misspoke if you believe that that's what I said. No, I think that's what you said. You said it's going to help GLE. What I said is GLE protects the integrity of its intellectual property because, and their proprietary information, because they say it gives us an advantage over others in the community. If Apelli is using that in the development of his app, then that would be inappropriate. But he's not doing that. And the district court made that finding, I believe. The district court said that what he's doing is innovative. It's doing something, it's developing. First of all, it's two years. After two years... Innovation and theft of trade secrets are not two different things. You can thieve trade secrets and innovate with the secrets that you've stolen. The finding that this is innovative is not in and of itself a finding that there was no theft of trade secrets. I think you have to defend that there was no theft of trade secrets on its own terms. I agree. Okay. What I'm saying is the innovation is a rejection of the old way. It's not using them, it's not like a patent where you have a patent and I'm doing an improvement on the patent. It's the opposite. It's like I've designed around, I've actually done something that the old isn't doing. To use the means and the proprietary information from GLE does him no good because he's using a different means. First of all, who he's marketing... Is he using the pricing formulas? No. And the court made that determination. He's using AI technology, which is artificial intelligence. You're shaking your head. Because AI, despite everything we've seen in the last two months about the advance of certain forms of AI, AI needs someone to create it, at least for now. Maybe one day AI will create itself and run us all. But it needs somebody to input stuff to create the AI that is then going to do something. For his app, you're telling me that there is a finding in the district court order that he did not use GLE's pricing formula to set up or to make the AI for his app? The district court found that by using AI and developing these algorithms to scan internet and publish... Don't forget GLE's information is all private. It's not published. So what the app does is it uses AI technology and algorithms to find publicly published information and pricing. It does the absolute opposite of what GLE does, which keeps its information secret. Maybe. I take it that that's a possibility. My question is, did the district court find that he did not use GLE's pricing formula? Because you could develop his app using their formula, right, of how to price things. If I get this scrap of metal, and it looks like this, and it's this big, and it's this wide, and it's this deep, and it's made up of these materials, the general market price for this within a 48-hour purchase scenario is this. You could use that to develop his app. Now, maybe you don't. Maybe he's completely thrown that out the window. And I'm asking you to help me with the district court's order with regards to a finding that he did not use their pricing formula. If the district court is not convinced that GLE made a requisite showing, the preliminary injunction should not issue. It doesn't mean that through discovery and through ultimately when we find finders of fact sitting in a booth of 12 or 6 chairs that they may make a finding then. We're here for the purposes of the denial of a preliminary injunction, which is a draconian measure. It has to be the opposite. It has to be clear to the judge. Those are different points. And I think you've got a good argument on those points on irreparable harm and the injunction being a drastic remedy. But you said that the district court made a finding that Mr. Tan did not use his pricing formulas. And the district court in the section dealing with irreparable harm said it's going to presume, as GLE has alleged, that Mr. Tan misappropriated trade secrets in the form of customer lists, pricing formulas, and scrap metal photos and other things. That's very different than a finding to the contrary. This court will be charged with finding that to be clearly erroneous. I think what Judge Jordan is saying is that there might not be, as you allege, a discrete factual finding to which we would defer unless clearly erroneous. Now, your separate argument may be, even if there is no discrete finding, nonetheless, I win on irreparable injury because the injunction is a drastic remedy because there is no eminence. But I just think you should be careful about overplaying your hand on whether or not there is or is not a discrete factual finding with respect to theft of trade secrets or whatever. Thank you. And when I look at, of course, I prefer to be on my side of this order. But with that said, you go into the order and you read what the judge found as the findings of fact. Then it would be the panel's job to take a look and say, is that clearly erroneous for him to make those factual findings based on the evidence that was presented? Because at the hearing and in the record is evidence that the formulas that were used, he showed where they were. They were formulas that were taken off of public sources. And they weren't GLEs. And GLE did not bring that to the court and to try to demonstrate that anywhere within any of the app or any of the materials that the appellee used, that it comprised their intellectual property. Okay. Thank you very much. Thank you, Court. Briefly, Your Honor, I think it's important to point out, it was raised, you know, what's protected and what is not protected. And we cited in our reply brief that the fact that being the middleman is a protectable interest. And there's no question, the facts do not dispute the fact that this app is made to replace what GLE does. You just need to look at the website. The evidence also... Can I ask you just, and I'm speaking only for myself, but maybe just to advance your argument to address irreparable injury, which I think is the toughest row for you to hoe. Because even if we assume that there was a theft, that there is a violation of the non-compete, if you can't show us irreparable injury, you know, you couldn't show the district court irreparable injury. And if you can't show us that the district court was clearly wrong about no irreparable injury, then you can't prevail. Right? Correct, Your Honor. So, I mean, I assume that we apply our own law, not Michigan law, in, you know, with respect to what constitutes irreparable injury. And so don't you have to show us that your injury is one that is incapable of being remedied by monetary damages? And I think when you read the Kelly Services case, which, again, is a Michigan case, but I think it's destructive. So this is like this weird, kind of like eerie question, maybe. So with respect to what constitutes irreparable injury, that's our law, right? Like, this is Eleventh Circuit law that the district court has to apply in determining whether or not it, as a judge sitting within the jurisdictional confines of the Eleventh Circuit, can issue a preliminary injunction. And our law about preliminary injunctions say no preliminary injunction unless the remedy cannot be remedied by money. Right? So you're bound by that. I do, Your Honor. And then Michigan, it said this. So then you look through to Michigan law, and it's like, well, can goodwill be remedied, loss of goodwill be remedied by monetary damages? And they say, sometimes, but it's tough. I wonder if there's some disconnect between can't be remedied by a monetary award and sometimes it can, but it's hard. Well, I think this court actually found that it is difficult. In the subscriber case, and it's not listed in our brief, I do have copies, in that case, the court found that it is very difficult to quantify that loss of goodwill. And I do have copies, and I've provided a copy to counsel. But further, I think that, just so I'm clear, since I haven't read it, but that's a case in which either the district court refuses a preliminary injunction and we affirm, or we say the district court granted and we reversed. It's not, Your Honor. In fact, it's the reversal of a summary judgment. But what it says is, one of the reasons why it defines that, you know, the compilation of this stuff as a trade secret, and it's very difficult to quantify the loss of it. But to your point, I think it's important on the Kelly Services case, because I think it's consistent with the 11th Circuit law, is that the simple, continued use of GLE's trade secrets is irreparable harm, in and of itself. The continued use of that material is... Let me now play the devil's advocate for the other side, because although the district court assumed violations when it did the irreparable harm analysis, there is this one line on the substantial likelihood part of the order, which suggests that Mr., how is it, Gigliotti? Gigliotti, Your Honor, like Italian ice cream. Almost, almost. Maybe, as Mr. Gigliotti said, that there is enough of a finding about no violation. Here's what the district court says. This is page 12 of the order. So I want to try to be accurate and fair to both sides. Plaintiffs failed to show that defendant utilized plaintiff-specific pricing formulas or primarily used pictures only plaintiff had access to in order to create the Dr. Scrap app, rather than pulling both from publicly available online scrap metal market resources. Is that a finding of fact? It is a finding of fact, Your Honor, but the problem is, is that it's the application of the law to the particular fact that, with respect to what Gigliotti proved. Again, if you... No, but if he, but if the district court finds he did not use your proprietary information, you're done. You're not? I disagree, Your Honor, because, again, when you look at the fact that he used the record evidence. Again, this court has the ability to review the evidence for clear error, and I think there is definitely, in our position, there is clear error. When you look at his website, this is Mr. Tan's website, shortly after he begins, he literally uses spreadsheets from GLE. We know this because it has the same typos in it. That evidence was not cited to by the district court in our position. That is clear error. That is using GLE's trade secrets. He uses a term in there. Did he testify that he did not use your trade secrets? Mr. Tan testified that he did not use our trade secrets. However... So if you've got a choice between two permissible views of the evidence, how do we label it clearly erroneous? You've got one individual who has purportedly first-hand knowledge saying, I didn't do it. And you've got documents suggesting he did do it. The district court chooses the live testimony over the documents. How do you show clear error? Well, I think that Your Honors have the ability to review that to determine the record for clear error. And, in fact, the district court doesn't cite to this. It says that it wasn't shown that he used it. I think when you go back and look and apply the law, that's broader than just monetary damages. You go and you look at this, at the evidence that was presented, and the application of the law to those facts, the district court was in error. But when you look at other factors that the district court somewhat disregarded, again, GLE did not turn this down. GLE never said, we don't want it. It's part of his job review. In his year, last year, his job review actually includes language that says, continue development of the trading platform. That's, it's in his long-term plan that he wrote. Who paid Mr. Tan's wife for her work? We have no idea who paid Mr. Tan's wife. Well, I mean, so at least you didn't pay her. We paid Mr. Tan. And Your Honors.  We paid Mr. Tan to develop the app. So how he utilized those individuals, how he, who he employed to do that, if he employed, we knew about that. As opposed to employ people with his own salary? He came to us and he came to GLE and referenced the fact that we were fully aware that he was using his wife to write the code. But I think Your Honor pointed out that. But he didn't come to GLE. My understanding of the record is he didn't come to GLE with the app. He started developing the app while he was employed with GLE. Is that not right? It actually, what he did was he was the bottleneck. He was having a difficult time getting his job done. So he wanted to create this technology. At GLE, he was the bottleneck. Correct. Which shows that he did not come to GLE with the app. He came to GLE to work as a, one of its employees as a middleman. And then when he or GLE thought he was a bottleneck, he turned to try to develop the app, right? To some extent, I'll agree with that. Over the course of his employment, he came to GLE and said, I think we can do my job better by developing this trading software platform. But GLE bought into it. They paid him for that. They promoted him. They paid him for this, to do this app. Now, Your Honor brought up a point. I realize I'm out of time, so I'll wrap up quickly. Point, go ahead. That with respect to his wife, she wrote the code. What's important is the information that goes into the code, what the code interprets. And there's no dispute, none, that the evidence shows that he used GLE's materials to do it. He created it for GLE. He did it while he was at GLE, and he was paid to do it. And within two months of his leaving, he's marketing to customers. Whether he got the list from a public website or not, the compilation of that list, the pricing strategies that goes into it, he knows those are competitors. Those are clients. Those are clients of GLE. That's his non-compete. And he solicited them anyways. Let me ask one more question, if I can. Going back to the duration of the non-competes, from what I can tell, it expires this September, because September will be two years. You mentioned offhand earlier about tolling. I'm not sure that was briefed. What are you referring to? Basically, Your Honor, it's not briefed, because obviously the preliminary injunction wasn't entered. Our argument would be at the lower court level, if the decision reversed, that that time is tolled during the pendency of the lawsuit. We're scheduled to go to trial in the fall, so it'll probably resolve itself then. But it'd be tolled. What's the authority for it to be tolled? I don't have the... To be honest, Your Honor, we didn't brief it, and I don't have the authority in front of me, so I apologize. But you're saying there is law that says, while litigation on the injunction is pending, the non-compete is tolled? Our position is that that would... That's your position. I just want to make sure there's law to support the position. I believe there's case law to support that, and it was something that the counsel referenced at the hearing, saying it was tolled during the pendency of the lawsuit. All right. Thank you both very much. We'll take the case under advisement.